# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
   **Plaintiff,**

 v.                 Case No. 22-CR-147

**GREGORY HAYES**
   **Defendant.**

## DECISION AND ORDER

Defendant Gregory Hayes, charged with firearm, drug trafficking, and fraud offenses, moved to suppress evidence seized pursuant to three search warrants. The magistrate judge handling pre-trial proceedings issued a recommendation that the motion be denied. Defendant objects, requiring me to consider the motion de novo. Fed. R. Crim. P. 59(b).

**I.**

The magistrate judge's report contains a detailed discussion of the 70-page affidavit used to obtain the warrants to search defendant's business and residence, and of the 62-page affidavit presented to obtain a warrant to search defendant's girlfriend's residence. Defendant makes no claim that the magistrate judge misstated the operative facts, so I adopt the background section of the report (R. 37 at 2-10) and present an abbreviated version herein.

In the affidavit used to secure the warrants to search defendant's business and home, the officer-affiant averred that defendant was involved in two separate criminal enterprises: a drug trafficking operation and a fraudulent vehicle sales operation involving fraudulent cashiers' checks and odometer rollbacks. The investigation began with a tip from a confidential source, who said he obtained drugs from a mid-level dealer supplied by defendant. Law enforcement

subsequently conducted a wide-ranging investigation into defendant's operations, including controlled buys from different suspects within the organization (although not from defendant personally), search warrants, surveillance, trap and trace orders, recorded jail calls, and administrative and grand jury subpoenas. Pursuant to the investigation, agents learned that defendant owned a business called Auto Source LLC, which was formerly operated by Calvin Coleman, a target in previous DEA investigations with a prior federal drug trafficking conviction; throughout the investigation, Coleman remained in consistent contact with defendant. During recorded jail calls, defendant was overheard making comments suggestive of drug trafficking and also spoke about "flipping cars." The investigation further linked defendant, through financial records, recorded calls, and surveillance, to another business, Merrywood Investments, allegedly involved in rolling back odometers. The investigation also linked to defendant and/or his business several individuals involved in drug sales. Perhaps most significantly, a former employee of defendant's business made statements regarding the auto fraud operation allegedly conducted by defendant and Edward Youngblood (now a co-defendant in this case). This former employee further indicated that defendant provided him with cocaine, in addition to discussing Coleman's alleged drug trafficking activities. The police corroborated the employee's statements with further investigation of the drug trafficking allegations, and the affidavit also contained detailed information on vehicles purchased with high mileage and then later sold with lower mileage, indicative of odometer tampering. Based on this information, the magistrate judge issued warrants to search defendant's business and residence on July 7, 2022.

The warrant to search defendant's girlfriend's residence issued several days later. In addition to discussing defendant's alleged drug trafficking and auto fraud operations, the

2

affidavit in support of this warrant averred that agents arrested defendant outside his girlfriend's residence. The girlfriend attempted to leave the scene with a diaper bag containing a large amount of cash she had retrieved from the residence. Agents detained her and conducted a protective sweep of the residence, observing a gun case and a bundle of currency. Agents did not conduct a search of the residence at that time, instead applying for a warrant, which the magistrate judge issued on July 12, 2022.

**II.**

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. "Probable cause exists when the circumstances 'indicate a reasonable probability that evidence of crime will be found in a particular location; neither an absolute certainty nor even a preponderance of the evidence is necessary.'" United States v. Adams, 934 F.3d 720, 725 (7th Cir. 2019) (quoting United States v. Aljabari, 626 F.3d 940, 944 (7th Cir. 2010)). Direct evidence linking a crime to a particular place, while helpful, is not essential to establish probable cause to search that place. Aljabari, 626 F.3d at 944.

> The necessity of this rule is obvious; often, nothing will <u>directly</u> indicate that evidence of a crime will be found in a particular place. For that reason, an affidavit need only contain facts that, given the nature of the evidence sought and the crime alleged, allow for a reasonable inference that there is a fair probability that evidence will be found in a particular place.

Id.

Where, as in this case, an affidavit is the only evidence presented to the issuing magistrate, the validity of the warrant rests solely on the strength of the affidavit. Adams, 934 F.3d at 725. And when the affidavit relies on information from informants, the magistrate considers the degree to which the informants acquired knowledge of the events through firsthand observation; the detail and specificity of the information provided by the informants;

3

the interval between the date of the events described and the application for the search warrant; and the extent to which law enforcement corroborated the informants' statements. Id. No one factor is determinative, and a deficiency in one factor may be compensated for by a strong showing in another or by some other indication of reliability. United States v. Searcy, 664 F.3d 1119, 1122 (7th Cir. 2011).

The task of a reviewing court is simply to ensure that the issuing magistrate had a substantial basis for concluding that probable cause existed. United States v. Harris, 996 F.3d 451, 461 (7th Cir. 2021). Even if the court finds the warrant invalid, the evidence seized need not be suppressed if the officers who conducted the search could have relied on the warrant in objective good faith. United States v. Matthews, 12 F.4th 647, 652 (7th Cir. 2021). An officer's decision to obtain a warrant is prima facie evidence of good faith. Id. The court therefore presumes that an officer with a warrant acted in good faith, and the defendant bears the burden of rebutting that presumption. Id. Because a judge is typically far more qualified than a police officer to decide whether probable cause exists, the burden to show unreasonable reliance on a warrant is heavy by design. Id. To meet this heavy burden, a defendant must establish one of four situations: (1) the affiant misled the magistrate with false information; (2) the magistrate wholly abandoned his neutral judicial role; (3) the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant was so facially deficient in particularizing its scope that the officers could not reasonably presume it was valid. Id.

**III.**

In a detailed and well-reasoned report, the magistrate judge found that probable cause supported all three warrants in this case. (R. 37 at 10-18.) In the alternative, he found that

4

defendant failed to rebut the presumption that the executing officers relied on the warrants in good faith. (R. 37 at 18-20.)

In his objections, defendant argues that the affidavits failed to establish that he was dealing drugs or engaged in odometer/check fraud, and that the affidavits also failed to establish probable cause that evidence of any criminal activity would be found at the places to be searched. However, defendant does not address the magistrate judge's good faith finding, despite the fact that he bears the burden on the issue; his motion could be denied on this basis alone. See Willis v. Caterpillar Inc., 199 F.3d 902, 904-05 (7th Cir. 1999) ("If a party objects to only some parts of the magistrate's report, he waives appellate review of the issues to which he has not objected.") (internal quote marks omitted).[1]

Moreover, defendant's specific challenges to the warrants lack merit. Defendant first contends that the affidavit failed to establish that he was dealing drugs, noting that the sources used by law enforcement made no buys from him personally. (R. 42 at 1.) He argues that his

---

[1] In his original motion, defendant briefly argued that the third and fourth exceptions to good faith applied. (R. 29 at 44-45.) Under the third exception, the evidence will be admitted unless (1) courts have clearly held that a materially similar affidavit previously failed to establish probable cause under facts indistinguishable from those presented in the case at hand, or (2) the affidavit is so plainly deficient that any reasonably well-trained officer would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant. United States v. Koerth, 312 F.3d 862, 869 (7th Cir. 2002). Defendant cited no case disapproving a materially similar affidavit. Instead, he claimed that the affidavit was so lacking in probable cause as to render official belief in its existence entirely unreasonable, noting that he was never once independently observed engaging in illegal activity; instead, the affidavit was full of information and observations relating to other people in an attempt to overwhelm the reader into thinking probable cause existed. (R. 29 at 44-45.) As will be discussed in the following text, direct evidence is not required; issuing magistrates are allowed to draw reasonable inferences from the evidence presented. In any event, as will also be discussed below, the affidavits did contain direct evidence of defendant's criminal activity. Finally, defendant stated: "Because the affidavit is so devoid of probable cause, it is also so facially deficient that any reliance thereon is unreasonable." (R. 29 at 45.) However, he developed no argument that the warrants failed to particularize their scope.

5

mere association with known drug dealers at or near his business does not mean his business was used as a supply location. (R. 42 at 2.) However, defendant does not address the statement by the former employee that defendant provided him with cocaine. While the employee did not see other narcotics transactions at the business, "he knew they did do narcotics transactions [there] because in the office there are scales and baggies in the desk." (R. 29-1 [Affidavit] at 25 ¶ 34.) Further, as the magistrate judge discussed, surveillance agents observed several confirmed drug dealers coming and going from the business and behaving suspiciously. Agents also overheard defendant on a recorded call speaking about an apparent drug exchange. (R. 37 at 17.)

Second, defendant argues that the affidavit failed to allege that he did any acts that constituted odometer and/or check fraud. (R. 42 at 2.) However, warrants need not be based on direct evidence. Rather, issuing magistrates may draw reasonable inferences based on the nature of the evidence and the offense. United States v. Zamudio, 909 F.3d 172, 175 (7th Cir. 2018). As the magistrate judge also discussed, the affidavit here provided detailed information about the fraud operation; that much of this information related to Youngblood and Coleman does not defeat probable cause. (R. 37 at 12-13.) The affidavit also relied on financial records linking defendant and his business to Merrywood, which sold vehicles with altered odometers, and a recorded call indicating defendant picked up car titles for Merrywood. (R. 37 at 14.) Finally, the affidavit provided information regarding at least five vehicles purchased with fraudulent checks located just outside Auto Source, defendant's business. (R. 37 at 15.)

Third, defendant complains that the affidavit attempted to connect him to others allegedly involved in criminal activity, without offering first-hand observations of him engaging in any illegal activities. (R. 42 at 2-3.) As indicated, the affidavit did include direct information

6

from the former employee. Defendant makes a conclusory argument that the informants relied upon in the affidavit were unreliable (R. 42 at 3), but as the magistrate judge noted, the former employee provided detailed information corroborated by subsequent law enforcement actions (R. 37 at 13-14). Again, the fact that much of this information related to others does not defeat probable cause.

Fourth, defendant argues that the affidavits failed to establish probable cause that evidence of criminal activity would be found at the places to be searched. (R. 42 at 4.) Again, "probable cause 'does not require direct evidence linking a crime to a particular place.'" Zamudio, 909 F.3d at 175 (quoting United States v. Anderson, 450 F.3d 294, 303 (7th Cir. 2006)). And, in the case of drug dealers, the Seventh Circuit has long held that evidence is likely to be found where the dealers live.[2] Id.; United States v. Haynes, 882 F.3d 662, 666 (7th Cir. 2018); United States v. Lamon, 930 F.2d 1183, 1188 (7th Cir. 1991). Defendant cites out of circuit cases discussing the required nexus (R. 42 at 4-5), but he fails to address the line of Seventh Circuit decisions approving such searches.

Defendant contends that the affidavit never explained how or why it was determined the residence was his (R. 42 at 4), but the affidavit indicates that defendant arrived at this location in a truck that listed to him at this address (R. 29-1 at 15 ¶ 21). The affidavit also discusses a fraudulently purchased truck listed in the name of Hayes Towing and Transport at the suspected home address. (R. 29-1 at 35 ¶ 54.) The former employee also told agents that he believed defendant kept narcotics at his house; on one occasion defendant had to grab the cocaine (as it was not with him at the business), and defendant was back at the shop within a

---

[2]The affidavit contained abundant evidence of criminal activity at the business, including the former employee's statements and the observations of surveillance agents.

7

few minutes. The employee stated that defendant lived a couple blocks from the shop, and agents confirmed that the suspected residence was in very close proximity to the business. (R. 29-1 at 23 ¶ 31.)

Defendant also argues that the affidavit supplied no basis to believe evidence of criminal activity would be found at his girlfriend's residence. (R. 42 at 5.) However, he fails to address the additional information set forth in the second affidavit, e.g., his girlfriend's attempt to remove a large amount of cash from the residence and the agents' observations of a gun case and more cash during a protective sweep. (R. 29-2 [Affidavit] at 49-50 ¶¶ 91-94.) As the magistrate judge noted, this evidence—coupled with the affiant's experience that persons involved in drug trafficking carry large amount of cash and defendant's status as a convicted felon—supported a finding of probable cause that evidence of a crime would be found upon a full search of the property. (R. 37 at 18.)

**IV.**

**THEREFORE, IT IS ORDERED** that the magistrate judge's recommendation (R. 37) is adopted, and defendant's motion to suppress (R. 29) is denied.

Dated at Milwaukee, Wisconsin, this 16th day of March, 2023.

/s/ Lynn Adelman
LYNN ADELMAN
District Judge